UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ELTON HOUSTON,

       Plaintiff,

                                         Case No. 2:07-cv-63
v.                                     HON. R. ALLAN EDGAR

GERALD RILEY, et al.,

              Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff prisoner Elton Houston, currently confined at the Ionia Maximum

Correctional Facility, filed this prisoner 42 U.S.C. § 1983 action against defendants Gerald Riley,

Dave Burnett and David Bergh.  Plaintiff's amended complaint states:

> The plaintiff, Mr. Houston states the following:  On December 12, 2006, he appeared before defendant Gerald Riley the LMF chaplain, for a fact finding informal hearing concerning the plaintiff's request for a Buddhist religious diet.  The plaintiff asserts that prior to this administrative hearing he was not (1) provided with advanced notice, (2) allowed to provide written documentary evidence to be entered into the record of the hearing, and (3) not provided with a written statement following the hearing informing him of the evidence relied upon and the reasons for the actions taken.

> The plaintiff contends that defendant Gerald Riley neglected to provide him with procedural due process protections prior to, during, and following his participation in the informal fact finding hearing. And that his 1st and 14th Amendment rights were violated.

> The plaintiff contends that defendant Dave Burnett failed to provide him with a written statement informing him of the evidence relied upon and the reason for the action taken.  Whereby, the plaintiff was deprived of his 1st Amendment right to freely exercise his religious beliefs.  And that his 1st and 14th Amendment rights were violated.

The plaintiff contends that defendants Gerald Riley and Dave Burnett substantially burdened him from freely exercising his religious beliefs by interfering with his request to receive a Buddhist religious diet in violation of 2000 42 U.S.C. (RLUIPA).

The plaintiff contends that defendants Gerald Riley and Dave Burnett retaliated against him because he filed a grievance against defendant Riley by dismissing his request for a Buddhist religious diet, and that his 1st, 8th and 14th Amendment rights were violated.

The plaintiff contends that defendant David Bergh had full knowledge of the unconstitutional acts of defendants Gerald Riley the LMF Chaplain and Dave Burnett the MDOC S.A.C. at a time when he could have prevented these unconstitutional actions and failed [to] protect the plaintiff from the unlawful conduct of defendants Riley and Burnett. And that his 1st, 8th and 14th Amendment rights were violated.

Plaintiff requested damages of thirty thousand dollars from defendants and a declaratory judgment.

After meeting with plaintiff, defendant Riley issued a memorandum which stated in part:

Prisoner Houston 466430 has requested the Buddhist Diet. He has declared Buddhism as his religion as of 12-11-06. He changed from Al Islam.

I asked him to briefly explain the major teachings of your designated religion. He said he believes in the teachings of Buddha, Sanga and Dharma. He follows the Buddha's teachings of enlightenment, meditation, inner maturity and physical purity. He said Buddha is the spirit of its founder and ones who seek this for enlightenment.

He follows the teachings of Dharma, teaching the path of enlightenment and Sanga, collection of a body of Buddhists (monks) that followers depend upon for enlightenment.

He said the purpose of the diet is to generate inner purity and mental awareness through the practice of mindful eating habits.

Buddhist, he said teach the precept that killing of any living being is wrong and they don't eat animals or any animal by-products.

He was able to recite the Four Noble Truths and the Eightfold path.

- 2 -

It was obvious to me that the material Mr. Houston presented was
from memory but he did make an effort to learn something about
Buddhism.  I submit a recommendation to approve his request.

Defendant Burnett issued a memorandum dated December 18, 2006, which denied plaintiff's request

for a strict vegetarian meal.  Defendant Burnett explained:

Houston #466430 requested accommodation with a strict vegetarian
menu.  It is noted that Houston only recently "converted" from Al
Islam to Buddhism, and that "conversion" was recorded in CMIS on
12/11/06 as part of this religious menu request.  It is further noted that
Houston has changed his faith of preference three times in the three
years he has chosen to spend in the MDOC.   Houston was
interviewed by Chaplain Gerald Riley.  Riley reports Houston had
memorized some basic information about Buddhism.  He appears to
have memorized from the information that is readily passed around.
He made almost identical statements as others make.  For instance, he
made the same remarks about the reason that a strict vegetarian menu
is required by many others.  He indicated Buddhist do not believe in
killing any living being.  It does not appear that using dairy products
or eggs requires the death of any living animals.  Houston can eat
from the non-meat option to assure that no animals have to die.
While sincerity is based on extrinsic data that is often difficult to
ascertain, it appears that Houston's level of sincerity is limited to the
level of having memorized a handful of statements.  That action can
as [sic] motivated by a desire to manipulate a transfer as to sincerely
pursue the practices of ones very newly adopted faith.  Consequently,
based on the information available to me, Houston's request for strict
vegetarian accommodations is denied at this time.  He should not be
transferred for the purpose of accommodation with the strict
vegetarian menu.

It is understood that denial of admission to a special religious menu
is not a failure to recognize faith preference.  Requests to declare
religious preference, to purchase and possess approved religious
items and to attend religious services must be processed according to
Department policy.

Defendants have moved for summary judgment.  Summary judgment is appropriate

only if the moving party establishes that there is no genuine issue of material fact for trial and that

he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of

evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that his First Amendment rights were infringed by the denial of a religious meal. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest". *See, for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction. *See, for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses);

- 4 -

*Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote).  *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness."  *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations."  *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue."  482 U.S. at 89-91.  First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.  *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984).  Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate."  *Turner*, 482 U.S. at 90.  Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."  *Turner*, 482 U.S. at 90.  Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90.  As stated by the court, this final factor "is not a 'least restrictive alternative' test."  *Id.* at 90.  "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).The court is not required to weigh evenly or to explicitly consider each of the four *Turner* factors.  *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir.

1999)(denying vegan diet to prisoner did not violate prisoner's First Amendment rights).  The Sixth

Circuit explained:

> By creating the *Turner* test, the Supreme Court surely did not intend
> to provide a mechanism through which prisoners could mount
> repeated challenges to prison regulations and require courts to
> analyze, in detail, the impact such regulations would have in any
> particular factual setting, even if prior court precedent would seem to
> dictate the validity of the regulations.  On the contrary:  the Supreme
> Court's creation of the *Turner* standard was motivated by a desire to
> "ensure[ ] the ability of corrections officials to anticipate security
> problems and to adopt innovative solutions to the intractable
> problems of prison administration, and avoid[ ] unnecessary intrusion
> of the judiciary into problems particularly ill suited to resolution by
> decree."  *O'Lone*, 482 U.S. at 349, 107 S.Ct. 2400 (quotation marks
> omitted).  Penal authorities may need a clear rule for dealing with
> certain continuing or recurring situations, even when that rule could
> be better-tailored to the rights of individual prisoners through a
> court's flexible, case-by-case analysis.

*Id.* at 404.

The MDOC offers a strict vegetarian diet for religious reasons to groups including

Buddhists.  Policy Directive 05.03.150 provides, in part:

> TT.  A prisoner may eat from a religious menu only with approval of
> the CFA Special Activities Coordinator.  Approval shall be granted
> only if it is necessary to the practice of the prisoner's designated
> religion.  To request approval, the prisoner must submit a written
> request to the Warden, TRV Manager, or designee, as appropriate,
> who shall obtain information regarding the prisoner's request and
> religious beliefs prior to referring the request to the CFA Special
> Activities Coordinator.  The CFA Special Activities Coordinator shall
> notify the Warden, TRV Manager or designee, as appropriate, of a
> decision; the Warden or TRV Manager shall ensure that the prisoner
> is notified. A prisoner whose request is denied shall not be allowed
> to submit another request to eat from that religious menu for at least
> one year.

The prison policy is constitutional.  The prison is entitled to create some standard to

determine whether a prisoner is entitled to a religious meal.  Providing special meals to prisoners is

- 6 -

more costly than providing a standard meal. Some prisoners may make requests for a religious meal simply to manipulate a transfer to a different prison. Determining sincerity of a religious belief is a difficult task. Defendant Burnett decided to deny plaintiff's request for a religious diet based upon his belief that plaintiff lacked sincerity. Moreover, there existed an alternative means for plaintiff to exercise his dietary beliefs. Plaintiff could select the non-meat option at meal time or eat dairy products.

Plaintiff also claims that defendants' conduct violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Section 2000cc-1 of the RLUIPA states:

(a)     General Rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1)     is in furtherance of a compelling governmental interest; and

(2)     is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b). If plaintiff has a sincere religious belief, then failing to provide him a religious based diet could qualify as a substantial burden on plaintiff's right to practice his religion.

In this case, under a totality of the circumstances approach, defendants have articulated valid reasons which justify the refusal to provide plaintiff a Buddhist diet. In the opinion

of the undersigned, defendants have set forth valid reasons to deny plaintiff's request for a religious meal.  Based upon plaintiff's interview and the information gathered by defendants, it was not unreasonable to deny plaintiff's request.  Plaintiff had recently made the change of preference to the Buddhist religion, which was plaintiff's third religious change of preference in three years.  Accordingly, defendants' determination that plaintiff showed a lack of sincerity should not be disturbed by this Court.  In the opinion of the undersigned, typically it is difficult for a defendant to establish that a plaintiff's religious belief is not sincerely held.  However, prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement.  The prison must maintain some aspect of control in accommodating prisoners needs.  Defendants have the right to make sure that each prisoner is sincere in his belief before allowing a prisoner access to a religious based meal program.  It is recognized that this is a very difficult task to undertake.  However, simply memorizing some basic requirements is not enough to show a sincere belief or need for a religious diet.  Under the circumstances of this case, especially when plaintiff already has meal options to accommodate his beliefs, it is the opinion of the undersigned that defendants correctly considered plaintiff's sincerity and made an appropriate and well reasoned decision under the totality of facts available.  In the opinion of the undersigned, defendants are entitled to summary judgment on plaintiff's claims.

Plaintiff claims that his due process rights were violated because he was not allowed to submit in writing his reasons for a Buddhist diet and he was not allowed to look at defendant Riley's notes.  Defendant Riley explains that plaintiff did not request to submit anything in writing at the time of the interview and that nothing in the policy requires defendant Riley to share his notes with plaintiff.  Clearly, there is no mandatory language which requires the specific information to be gathered.  Moreover, plaintiff has no due process rights arising from the prison policy directives.

Prior to *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court's decision in *Hewitt v. Helms*, 459 U.S. 460 (1983), provided the controlling law for determining whether a state statute granted prisoners a federally cognizable liberty interest.  The Court held that the State created a protected liberty interest because the statute contained "explicitly mandatory language" that placed substantive limitations on the discretion of prison officials to place prisoners in segregation.  *Id.* at 472.  In *Sandin*, the Supreme Court revisited the issue of how to determine whether a state statute grants prisoners a liberty interest protected by the Due Process Clause.  Like *Hewitt*, the case involved disciplinary segregation for a prisoner who had committed a misconduct.  In *Sandin*, the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).  The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation at issue in that case did not impose an atypical and significant hardship.  *Sandin*, 515 U.S. at 484.  It does not appear that plaintiff actually prepared a written statement.  Nevertheless, such a statement would not necessarily be helpful, because there exists no safeguard to ensure that the statement was actually plaintiff's and not copied from another source or prepared by someone else.  Also, there exists no reason why defendant Riley should have to show plaintiff the notes that Riley made at the interview.  The failure to consider a written statement from plaintiff to help determine whether a religious meal was required, and the failure of defendant Riley to share his notes with plaintiff, in the opinion of the undersigned, was not a violation of due process.

- 9 -

Further, plaintiff cannot show any violation of his Eighth Amendment rights. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Plaintiff has not shown that he has a medical order for a specific diet. The denial of a religious diet cannot be grounds for an Eighth Amendment claim.

Defendants Riley and Bergh argue that they were not involved in the alleged denial of plaintiff's rights. Defendant Riley made a recommendation for plaintiff to receive the requested diet. Defendant Riley asserts that he did not deny plaintiff the requested diet and his recommendation could not have violated plaintiff's rights. Defendant Bergh was not involved in the decision process, but is named as a defendant simply because he is the warden. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable

under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp.

- 11 -

335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).  In the opinion of the undersigned, plaintiff has not alleged facts establishing that defendants Riley or Bergh were personally involved in the alleged unconstitutional activity which forms the basis of his claim.

Plaintiff asserts that he was denied a Buddhist diet in retaliation for his grievance filings.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  Plaintiff alleges that he was retaliated against for filing a grievance on the denial of a religious diet.  Plaintiff has not shown that he filed a prior grievance on this issue before his religious diet was denied.  The alleged adverse action, the denial of the religious diet, took place before plaintiff filed his grievance.  Logically, plaintiff cannot show that his grievance was a factor in the earlier decision to deny his request for a religious meal.

Alternatively, it is recommended that plaintiff's monetary damage claims be dismissed under qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th

Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

- 13 -

than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action

to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted.  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429.  If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429.  These are both purely legal questions.  The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights.  *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).  In the opinion of the undersigned defendants are entitled to the defense of qualified immunity because plaintiff cannot establish that defendants' violated his constitutional rights.

Accordingly, it is recommended that defendants' Motion for Summary Judgment (Docket #58) be granted and this case be dismissed in its entirety.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $455

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   January 28, 2009